Michael J. Nader, SBN 200425
Michael.Nader@ogletree.com
Alexandra Asterlin, SBN 221286
alexandra.asterlin@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA 95814
Telephone: 916-840-3150
Facsimile: 916-840-3159

Attorneys for Defendant CURRICULUM ASSOCIATES, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYNNE SIERRA, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>CURRICULUM ASSOCIATES, LLC, a limited liability company; and DOES 1 through 50, inclusive<br><br>    Defendant. | Case No.<br><br>**DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties; Corporate Disclosure Statement; Declarations of Alexandra Asterlin, Magdalena Sudibjo, Colleen White, and Juliana Estrada in Support of Removal]<br><br>Action Filed:    12/17/2025<br>Trial Date:    None set |

1

DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF KATHRYNNE SIERRA AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Curriculum Associates, LLC ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. As discussed, below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendant states as follows:

**I.      THE STATE COURT ACTION**

1.      On December 17, 2025, plaintiff Kathrynne Sierra ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Orange, which was assigned case number 30-2025-01534071-CU-OE-CXC (the "State Court Action").

2.      The Complaint brings putative class claims for the alleged: (1) Unfair Competition in Violation of Business & Professions Code § 17200, *et seq.*; (2) Failure to Pay Minimum Wages in Violation of Labor Code §§ 1194, 1197, and 1197.1; (3) Failure to Pay Overtime Wages in Violation of Labor Code § 510; (4) Failure to Provide Required Meal Periods in Violation of Labor Code §§ 226.7, 512, and the Applicable Wage Order; (5) Failure to Provide Required Rest Periods in Violation of Labor Code §§ 226.7, 512, and the Applicable Wage Order; (6) Failure to Provide Accurate Itemized Statements in Violation of Labor Code § 226; (7) Failure to Reimburse Employees for Required Expenses in Violation of Labor Code § 2802; (8) Failure to Pay Sick Pay Wages in Violation of Labor Code §§ 201-204, 233, and 246; and (9) Discrimination and Retaliation in Violation of FEHA.

3.      On January 21, 2026, Defendant received service of the Complaint, Summons, Civil Case Cover Sheet, and the Alternative Dispute Resolution (ADR)

Information Package through its registered agent for service of process. These documents were the initial pleadings received by Defendant setting forth the claims upon which this action is based. (Declaration of Alexandra Asterlin ("Asterlin Decl."), ¶ 4.) A true and correct copy of the Complaint served on Defendant is attached hereto as **Exhibit A** to this Notice of Removal. True and correct copies of all other process, pleadings, and orders served on Defendant are attached as **Exhibit B** to this Notice of Removal. (*Id.*, at ¶ 4.)

4. In accordance with 28 U.S.C. Section 1446(a), Exhibits A and B represent the entirety of the process, pleadings, or orders served on Defendant in the State Court Action.

5. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

6. On February 19, 2026, Defendant timely filed and served its Answer to the Complaint in the Orange County Superior Court. A true and correct copy of the Answer is attached as **Exhibit C** to the Notice of Removal. (Asterlin Decl., ¶ 5.) Defendant has not served or been served with any other process, pleadings, or orders in this action other than Exhibits A through C to the Notice of Removal. (*Id.*)

7. This Notice is Timely. This Notice of Removal is timely as it is filed less than one year from the date this action was commenced and within 30 days of service upon the Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

8. Service of the Summons and Complaint on Defendant was effective January 21, 2026; because Defendant filed this removal within 30 days of service of the Summons and Complaint, removal is timely.

3

DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

## II. THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

9. As set forth below, Plaintiff's claims as alleged in the Complaint are removable under CAFA, 28 U.S.C. § 1332(d). Under CAFA, this Court has original jurisdiction because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A. The Size of the Putative Class Exceeds 100

10. Plaintiff defines, generally, the members of the class to be "all individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees…at any time during the period beginning four (4) years prior to the filing of this Complaint…" (Compl. ¶ 4.)

11. Defendant's records show that more than 100 current and former employees fall within Plaintiff's proposed class. (*See* Declaration of Magdalena Sudibjo (" Sudibjo Decl."), ¶ 7.)[1] Defendant's business records show that, during the period from December 17, 2021 to January 24, 2026 (the "**Relevant Period**")[2], there

---

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold); *Perea*, 2020 WL3989686, at *4.

[2] Defendant acknowledges that the relevant "statutory" period is from December 17, 2021 until present. Because of the need to review the data for this Notice of Removal

4

were at least **162** Putative Class Members (collectively referred to as the **"putative class members"** or **"PCMs"**.) (*See id.*) Although Defendant denies that class treatment is appropriate, Plaintiff's proposed class, if certified, would consist of more than 100 members.

### B. The Parties are Diverse

12. Citizenship of Defendants. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.*, at 1184. The Court further clarified the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

13. At all times on or after the date this action was filed, Defendant has been a citizen of the state of Massachusetts. (*See* Declaration of Juliana Estrada ("Estrada Decl."), ¶ 2.) Defendant was, at the time of filing this action, and remains, a corporation incorporated under the laws of Massachusetts. (*Id.*) Defendant neither is incorporated in California, nor has a principal place of business in California. *See id.* Defendant's principal place of business is also Massachusetts. (*Id.*) Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Massachusetts and not a citizen of California.[3]

---

by a date certain, Defendants have designated December 17, 2021 until January 24, 2026 the "Relevant Period" for purposes of this Notice of Removal.

[3] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

14. <u>Citizenship of Plaintiff and Putative Class Members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residency is *prima facie* evidence of one's domicile. *State Farm Mut. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

15. Plaintiff is a California citizen. (*See* Compl. ¶ 3.) Plaintiff alleges that she worked for Defendant in California at all times relevant to this action.[4] (*Id.*) Defendant's employment records reflect that Plaintiff lived in the State of California, including the home address that Plaintiff provided for payroll purposes. (*See* Declaration of Colleen White ("White Decl."), ¶ 2.)

16. Members of the proposed class, who by definition are, or were, employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of Massachusetts (and there is no evidence that she is), there is no possible way that the tens of putative class members, all of whom worked in California (Compl. ¶ 25), were also citizens of Massachusetts.

17. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendant is a citizen of Massachusetts while Plaintiff and/or other Putative Class Members are citizens of California.

**C.** **<u>The Amount in Controversy Exceeds an Aggregate of $5,000,000</u>**

18. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

---

[4] Through this Removal, Defendant takes no position as to whether or not it employed Plaintiff, and it instead relies on Plaintiff's allegation that she and the Putative Class Members worked for Defendant.

19. In the Complaint, Plaintiff seeks, among other things, unpaid minimum and overtime wages, unpaid meal and rest break premiums, unreimbursed necessary business expenses, waiting time penalties, and wage statement penalties during the applicable statutory periods on behalf of herself and the putative class members. *See generally* Complaint. As set forth below, the amount in controversy exceeds the $5 million threshold for CAFA removal. See 28 U.S.C. § 1332(d).

### a. Relevant Class Member Data

20. Plaintiff alleges violations of Section 17200 *et seq.* of the Business & Professions Code. A four-year statutory period applies to the class-action claims for meal/rest premiums and unpaid wages when the complaint pleads a derivative Unfair Competition ("UCL") claim. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

21. Upon careful review of Defendant's records[5] over the Relevant Period, Defendant employed 162 individuals as PCMs. (Sudibjo Decl., ¶ 7.)

22. Within the three-year statute of limitations applicable to the Eighth Cause of Action based on the December 17, 2025 filing date of the Complaint, and data covering the period December 17, 2022 to January 24, 2026, 70 putative class members separated employment from Defendant. (Sudibjo Decl., at ¶ 17.)

23. Within the one-year statute of limitations applicable to the Sixth Cause of Action, based on the December 17, 2025 filing date of the Complaint, and data covering the period December 17, 2024 to January 24, 2026, 82 putative class members worked 1,623 biweekly pay periods. (Sudibjo Decl., at ¶¶ 12-13.)

---

[5] Records that were reviewed by Magdalena Sudibjo and referenced in her declaration were provided by Defendant through its counsel, as set forth in the Declaration of Colleen White, ¶¶ 3-11.

### b. **Plaintiff's Second Cause of Action – Failure to Pay Minimum Wages**

24.    With reference to Plaintiff's Second Cause of Action, she alleges, "DEFENDANT maintained a wage practice of paying PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS without regard to the correct amount of time they work. As set forth herein, DEFENDANT's policy and practice was to unlawfully and intentionally deny timely payment of wages due to PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS." (Complaint, ¶ 63.)

25.    Plaintiff further alleges, "DEFENDANT's unlawful wage and hour practices manifested, without limitation, applicable to the CALIFORNIA LABOR SUB-CLASS as a whole, as a result of implementing a policy and practice that denies accurate compensation to PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS in regards to minimum wage pay." (Complaint, ¶ 64.)

26.    Plaintiff further alleges, "[i]n committing these violations of the California Labor Code, DEFENDANT inaccurately calculated the correct time worked and consequently underpaid the actual time worked by PLAINTIFF and other members of the CALIFORNIA LABOR SUB-CLASS.  DEFENDANT acted in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the California Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations." (Complaint, ¶ 65.)

27.    Plaintiff makes no allegations to indicate any limit to the frequency of the alleged violations. The Central District has accepted at removal a conservative assumption of at least one hour of unpaid time per workweek for class members based on similar allegations. See *Soto v. Tech Packaging, Inc.*, No. ED CV 19-1766-MWF (SHKx), 2019 U.S. Dist. LEXIS 208320, at *16 (C.D. Cal. Dec. 3, 2019) (The court held it was reasonable, for CAFA amount-in-controversy purposes, to assume at least one hour of unpaid minimum wages per workweek where the complaint alleged a uniform "pattern and practice" of wage abuse and failure to pay for all hours worked.

8

This supported use of a consistent weekly violation rate to calculate classwide minimum-wage exposure. The court recognized that minimum-wage underpayments may be included in the amount in controversy and, where pleaded, liquidated damages under Labor Code § 1194.2); *Andrade v. Beacon Sales Acquisition, Inc.*, No. 2:19-cv-06963-MCS (RAO), 2021 U.S. Dist. LEXIS 198561, at *6 (C.D. Cal. May 24, 2021) (Based on allegations of a companywide "policy and practice" causing off-the-clock work, the court accepted an assumption of one hour of unpaid minimum wages per workweek to establish the CAFA amount in controversy); *see also Gallagher-Stevens v. Indep. Living Sys., LLC*, No. 24-cv-04582-WHO, 2025 WL 354630, at *5–6 (N.D. Cal. Jan. 31, 2025) (The court held that when a complaint alleges a "company policy and procedure" and "uniform practice of rounding the actual time worked," courts have held that six minutes per shift of rounding is reasonable, supporting a 100% violation rate for the minimum wage claim.) The uniform weekly assumption was deemed a conservative, reasonable measure of class wide minimum-wage underpayment. When pleaded, liquidated damages for minimum-wage violations under Labor Code § 1194.2 properly count toward the amount in controversy); *see also Franke v. Anderson Merchandisers LLC,* 2017 WL 3224656 (C.D. Cal. July 28, 2017) (100% violation rate appropriate for "uniform" illegal practice allegations.)

28.    To calculate the potential exposure for alleged minimum wage violations, every five (5) shifts worked by 162 PCMs in the provided timekeeping data was multiplied by one hour to calculate the total amount of minimum wage hours to be used to calculate the potential exposure. That value was then multiplied by each employee's actual base rate. Applying this rate yields at least $349,628 in controversy, which is then doubled (based on the liquidated damages claim) for a total amount of **$699,256** in controversy for this claim. (Sudibjo Decl., ¶¶ 18-19.)

### c.  **Plaintiff's Third Cause of Action – Failure to Pay Overtime Wages**

29.    With reference to Plaintiff's Third Cause of Action, she alleges, "[d]uring the CALIFORNIA LABOR SUB-CLASS PERIOD, PLAINTIFF and CALIFORNIA

LABOR SUB-CLASS Members were required, permitted or suffered by DEFENDANT to work for DEFENDANT and were not paid for all the time they worked, including overtime work. (Complaint, ¶ 76.)

30.   Plaintiff further alleges, "DEFENDANT's unlawful wage and hour practices manifested, without limitation, applicable to the CALIFORNIA LABOR SUB-CLASS as a whole, as a result of implementing a policy and practice that failed to accurately record overtime worked by PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members and denied accurate compensation to PLAINTIFF and the other members of the CALIFORNIA LABOR SUBCLASS for overtime worked, including, the overtime work performed in excess of eight (8) hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek." (Complaint, ¶ 77.)

31.   Plaintiff further alleges, "[i]n committing these violations of the California Labor Code, DEFENDANT inaccurately recorded overtime worked and consequently underpaid the overtime worked by PLAINTIFF and other CALIFORNIA LABOR-SUB CLASS Members. DEFENDANT acted in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the California Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations" and that "[a]s a direct result of DEFENDANT's unlawful wage practices as alleged herein, the PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS did not receive full compensation for overtime worked." (Complaint, ¶ 78.)

32.   Plaintiff makes no allegations to indicate any limit to the frequency of the alleged violations. Under these conditions, case law permits limiting the overtime estimate to one hour per week as reasonable. *See Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at * 5 (E.D. Cal. June 30, 2021) ("Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice'

DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

of failing to pay overtime wages."). *See, e.g.*, *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020); see also *Stanley v. Distrib. Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Here, as in *Hende*r and *Sanchez*, *supra*, a 20% violation rate is reasonable because Plaintiff alleges a policy and practice of violations and no contrary evidence showing otherwise exists.

33. To calculate the potential exposure for alleged overtime violations, for every five (5) shifts worked by 162 PCMs in the provided timekeeping data was multiplied by one hour to calculate the total amount of overtime hours to be used to calculate the potential exposure. That value was then multiplied by 1.5 times each employee's most recent base hourly rate. This calculation yielded the total potential unpaid overtime at **$524,442**. (Sudibjo Decl. ¶ 20.)

### d. **Plaintiff's Fourth Cause of Action – Meal Period Liability under Labor Code § 226.7**

34. With reference to Plaintiff's Fourth Cause of Action, she alleges "DEFENDANT from time to time failed to provide all the legally required off-duty meal breaks to PLAINTIFF and the other CALIFORNIA LABOR SUB-CLASS Members as required by the applicable Wage Order and Labor Code. (Complaint, ¶ 87.)

35. Plaintiff further alleges, "[t]he nature of the work performed by PLAINTIFF and CALIFORNIA LABOR SUB-CLASS MEMBERS did not prevent these employees from being relieved of all of their duties for the legally required off-duty meal periods" and that "[a]s a result of their rigorous work schedules, PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were from

11

time to time not fully relieved of duty by DEFENDANT for their meal periods. (Complaint, ¶ 87.)

36.    Plaintiff further alleges, "DEFENDANT's failure to provide PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS Members with legally required meal breaks prior to their fifth (5th) hour of work is evidenced by DEFENDANT's business records from time to time. (Complaint, ¶ 87.)

37.    Plaintiff further alleges, "DEFENDANT failed to provide PLAINTIFF and CALIFORNIA CLASS Members with a second off-duty meal period in some workdays in which these employees were required by DEFENDANT to work ten (10) hours of work from time to time" and that, "[a]s a result, PLAINTIFF and other members of the CALIFORNIA LABOR SUB-CLASS therefore forfeited meal breaks without additional compensation and in accordance with DEFENDANT's strict corporate policy and practice." (Complaint, ¶ 87.)

38.    Plaintiff further alleges, "DEFENDANT…fail[ed] to compensate PLAINTIFF and CALIFORNIA LABOR SUB-CLASS Members who were not provided a meal period, in accordance with the applicable Wage Order, one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided." (Complaint, ¶ 88.)

39.    If an employer fails to provide an employee a meal period as required, the employee may recover one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided.  Cal. Labor Code § 226.7.  Plaintiff seeks unpaid meal period premiums under Cal. Labor Code § 226.7 and the applicable Wage Order, on behalf of herself and the putative class.  (Complaint, ¶ 88, Prayer for Relief.)

40.    The Complaint does not allege the number of meal periods that were not provided to Plaintiff or the putative class members.  Plaintiff's allegations regarding the frequency of purported meal period violations are a result of lacking a uniform policy and procedure. (Complaint, ¶¶ 28 & 87.) Where Plaintiff alleges a systematic

12

deprivation of rights, and the plaintiff has alleged a "uniform" policy and practice, it is appropriate to assume a 100 percent violation rate in calculating the amount in controversy. *See Amaya v. Consolidated Container Co.*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate"); *see also Mendieta v. Williams Scotsman, Inc.*, No. 2:24-cv-09388, 2025 WL 104095, at *4 (C.D. Cal. Jan. 15, 2025) (the court held that where plaintiff alleges a policy and practice violation, including allegations that rounding was occurring on a "per shift" basis, such allegations support a 100% meal break violation rate); *Franke v. Anderson Merchandisers LLC,* 2017 WL 3224656 (C.D. Cal. July 28, 2017) (100% violation rate appropriate for "uniform" illegal practice allegations.)

41.    During the relevant four-year statute of limitations, a meal premium was calculated for each shift worked by a PCM that was more than five (5) hours long. At each employee's most recent base hourly rate, the amount of missed meal period premiums in controversy during the Relevant Period is $1,038,769. (Sudibjo Decl. ¶ 21.)

42.    Further, as the Prayer for Relief seeks penalties for meal violations under the applicable wage order, for a period of one (1) year prior to the Complaint, for each alleged meal break violation, Defendant calculated an additional penalty of $50 for the first violation, and $100 for all subsequent violations resulting to $749,100 in controversy. (Sudibjo Decl. ¶ 25.)

43.    The total amount in controversy for Plaintiff's meal violation claim is **$1,787,869**.

e. **Plaintiff's Fifth Cause of Action – Rest Period Liability Under Labor Code § 226.7**

44.    Plaintiff's Fifth Cause of Action alleges, "PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were from time to time required to work in excess of four (4) hours without being provided ten (10) minute rest periods" and that, "these employees from time to time were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more from time to time" and that, "PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were also not provided with one hour wages in lieu thereof. (Complaint, ¶ 91.)

45.    Plaintiff further alleges, "[a]s a result of their rigorous work schedules, PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were periodically denied their proper rest periods by DEFENDANT and DEFENDANT's managers" and that, "DEFENDANT further violated California Labor Code §§ 226.7 and the applicable IWC Wage Order by failing to compensate PLAINTIFF and CALIFORNIA LABOR SUB-CLASS Members who were not provided a rest period, in accordance with the applicable Wage Order, one additional hour of compensation at each employee's regular rate of pay for each workday that rest period was not provided." (Complaint, ¶ 91-92.)

46.    If an employer fails to provide an employee a rest period as required, the employee may recover one additional hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided. Cal. Labor Code § 226.7. Plaintiff seeks unpaid rest period premiums under Cal. Labor Code § 226.7 and the applicable Wage Order, on behalf of herself and the putative class. (Complaint, ¶ 92, Prayer for Relief.)

DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

47.     The Complaint does not allege the number of rest periods that were not provided to Plaintiff or the putative class members. Plaintiff's allegations regarding the frequency of purported rest period violations are that it was "periodically" and a result of lacking a uniform policy and procedure.  (Complaint, ¶¶ 28 & 91.) Where Plaintiff alleges a systematic deprivation of rights, and the plaintiff has alleged a "uniform" policy and practice, it is appropriate to assume a 100 percent violation rate in calculating the amount in controversy. *See Amaya v. Consolidated Container Co.,* No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate"); *see also Franke v. Anderson Merchandisers LLC,* 2017 WL 3224656 (C.D. Cal. July 28, 2017) (100% violation rate appropriate for "uniform" illegal practice allegations.)

48.     Further, Plaintiff additionally alleges Defendant did not allow Plaintiff and the putative class members "unconstrained walks" for rest breaks and did not allow its employees to leave the premises during their rest period. (Complaint, ¶ 12.) Where Plaintiff alleges that employees are prohibited from leaving the premises during their rest break, it is also appropriate to assume a 100 percent violation rate in calculating the amount in controversy. *Bell v. CEVA Logistics U.S., Inc.,* No. 5:19-cv-00352-SVW-KK, 2019 WL 6357973, at *1, *3 n.4 (C.D. Cal. July 15, 2019) (the court held that a 100% violation rate is appropriate for rest break claims where the plaintiff alleges the defendant had an "established company policy" prohibiting employees from leaving the work premises during rest breaks, because such allegations support the inference that no duty-free rest breaks were provided at all); *Herrera v. Signature Flight Support LLC,* No. 2:22-cv-03082-SSS (AGRx), 2022 WL 4225376, at *4 (C.D. Cal. Sept. 13, 2022) (the court concluded that allegations that an employer required putative class members "to remain on the worksite premises and/or tethered to work-

15

communication devices during any rest periods" supported a 100% violation rate for determining the amount in controversy); *Gaye v. GMRI, Inc.*, (S.D. Cal. Mar. 21, 2024) (the court concluded that allegations of a "policy" and "rule" that employees could not leave the premises during rest breaks "impl[ies] that every rest period break was unlawfully restricted," thus supporting the defendant's "application of a 100% violation rate for 'on-premises' rest period violations"); *Alvarez v. Office Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (the court agreed with the defendant that it "could utilize an alleged 100% violation rate in calculating the amount in controversy" because the plaintiff's complaint alleged a uniform practice of rest period violations, including that employees could not leave the premises during rest periods); *Thompson v. Fastaff, LLC*, No. 2:22-cv-03584-SVW, 2022 WL 4109450, at *5-6 (C.D. Cal. Sept. 8, 2022). (the court found that a 100% violation rate for rest breaks was supported by allegations that class members "remained under defendants' control during any rest period, rendering said rest periods on duty," including restrictions on leaving the premises.)

49.    During the relevant four-year statute of limitations, a rest premium was calculated for each shift worked by a PCM that was at least three and half (3.5) hours long. At each employee's most recent base hourly rate, the amount of missed meal period premiums in controversy during the Relevant Period is $1,297,543. (Sudibjo Decl. ¶ 22.)

50.    Further, as the Prayer for Relief seeks penalties for rest break violations under the applicable wage order, for a period of one (1) year prior to the Complaint, for each alleged rest break violation, Defendant calculated an additional penalty of $50 for the first violation, and $100 for all subsequent violations resulting in $930,950 in controversy. (Sudibjo Decl. ¶ 26.)

51.    The total amount in controversy for Plaintiff's rest break violation claim is **$2,228,493**.

**f.    Plaintiff's Sixth Cause of Action – Failure to Provide Accurate Wage Statements in Violation of Labor Code § 226**

52.    Plaintiff alleges Defendant failed to provide accurate wage statements as required by California Labor Code section 226 *et seq*. (Complaint, ¶¶ 94-97.)

53.    Plaintiff's claim for wage statement penalties is wholly derivative of her claims for unpaid minimum, overtime, and premium wages. As such, it puts at issue every wage statement for every pay period during the 1-year statutory period from December 17, 2024 to the present. See, e.g., *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same)). Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]"

54.    82 PCMs were identified as being provided a wage statement from December 17, 2024 through January 24, 2026.  Plaintiff alleges that "DEFENDANT knowingly and intentionally failed to comply with Cal. Lab. Code § 226, causing injury and damages to PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS." (Complaint, ¶ 97.) Accordingly, Plaintiff has put $4,000.00 of wage statement penalties in controversy, with assumed total of 1,623 allegedly affected pay periods and total alleged inaccurate wage statement penalties at issue in the amount of **$162,300**. (Sudibjo Decl., ¶¶ 12, 24.)

g. **Plaintiff's Eighth Cause of Action – Failure to Pay Sick Pay Resulting in Waiting Time Penalties in Violation of Labor Code §§ 201-203**

55.    Plaintiff's Eighth Cause of Action seeks waiting time penalties in an amount equal to up to 30 days' wages for Plaintiff for Defendant's alleged failure to pay sick pay wages owed to employees at the time of discharge. (Complaint, ¶¶ 102-107.)

56.    Plaintiff alleges, "[a]s a matter of policy and practice, DEFENDANT pays sick pay wages to PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS at the incorrect rate of pay." (Complaint, ¶ 104.)

57.    Plaintiff alleges, "as a matter of policy and practice, DEFENDANT routinely underpays sick pay wages and thus did not timely pay PLAINTIFF and the other members of the CALIFORNIA LABOR-SUB-CLASS all owing and underpaid sick pay wages" and that "[a]s a result, DEFENDANT violates Cal. Lab. Code §§ 201-203, 233, and 246, among other Labor Code provisions." (Complaint, ¶ 106.)

58.    The "recovery of waiting time penalties does not hinge on the number of violations committed; rather Defendants 'need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply.'" *Demaria v. Big Lot Stores PNS*, No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) (quoting *Noriesta v. Konica Minolta Bus. Solutions U.S.A.*, No. ED CV 19-0839-DOC-SPx, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019)). Where, like here, final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members" when estimating that amount in controversy under CAFA. *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit"). The Ninth Circuit has

18

confirmed the reasonableness of assuming 30 days of daily wages for calculating the amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022).

59.    Labor Code section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). Because the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made." Therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained un-paid up to a total of 30 days." *Id*. at 493.

60.    Plaintiff's allegations that the harm applied uniformly to all putative class members as a result of Defendant's uniform policies and practices justify a 100% violation rate. (Complaint, ¶¶ 8, 107.)

61.    To calculate the value of Plaintiff's waiting time penalties claim for purposes of the amount in controversy, Defendant counted 70 PCMs who separated employment during the three-year statutory period beginning December 17, 2022 through January 24, 2026. Defendant then multiplied each separated employee's most recent base hourly rate by 8 hours per day and multiplied that amount by 30 days. (Sudibjo Decl., ¶ 23.) This resulted in an amount in controversy for the waiting time claim of **$743,400**. *Id*.

### h.  **Summary of Amount in Controversy**

62.    As set forth above, the allegations in the Complaint satisfy the requisite $5 million for purposes of removal under CAFA:

| Damages | Amount |
|---|---|
| Alleged Minimum Wage | **$699,256** |
| Alleged Unpaid Overtime | **$524,442** |

19

| | |
|---|---|
| Alleged Meal Period Violations | **$1,787,869** |
| Alleged Rest Period Violations | **$2,228,493** |
| Alleged Wage Statement Violations | **$162,300** |
| Alleged Waiting Time Penalties | **$743,400** |
| **TOTAL** | **$6,145,760** |

Thus, Defendant has clearly established that removal under CAFA is proper under CAFA is proper under 28 U.S.C. §1332(d).

### i. Further Data

63.    For purposes of this removal, the above calculations are more than sufficient to support the required $5 million threshold amount in controversy. Plaintiff further alleges under her Seventh Cause of Action that Defendant failed to reimburse her and Putative Class Members for necessary business expenses. (Compl., ¶¶ 105-108.) To the extent that Plaintiff is alleging that Defendant failed to reimburse her and Putative Class Members for such business-related expenses (*e.g.*, cell phone use and fuel), there is an even greater amount in controversy. *See, e.g., Vallejo v. Sterigenics U.S., LLC,* No. 320CV01788AJBAHG, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving assumption each employee incurred only cell phone expenses of $25 per month, or $300 per year, where plaintiff provided no details regarding the total expenses).

64.    Plaintiff also seeks recovery on behalf of her proposed class for recovery of damages and penalties under her First Cause of Action for restitution pursuant to California Business & Professions Code section 17200, *et seq*.

65.    As alleged, the amount in controversy clearly exceeds the requisite threshold.

### j. Attorneys' Fees

66.    Based on the above, Defendant has demonstrated there is at least **$6,145,760** in controversy.

20

DEFENDANT CURRICULUM ASSOCIATES, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

67. Plaintiff also seeks to recover attorneys' fees in connection with the above claims. (Compl.– Prayer for Relief, pgs. 46-48.)  In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA.  *Id*. (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV160105ABPJWX, 2017 WL 1243131, at \*6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc*., No. CV-1501350ABPLAX, 2015 WL 12765359, at \*7 (C.D. Cal. Apr. 28, 2015) (same). "[W]hen a statute or contract provides for the recovery of attorney fees, prospective attorney fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott, supra*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 889 F.3d 785, 794 (9th Cir. 2018).

68. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$7,262,187** ($6,145,760 x .25 = $1,116,427). (Sudibjo Decl., ¶ 27.)

## III.   VENUE

69. Venue lies in this Court because Plaintiff's action is pending in this district and division.  *See* 28 U.S.C. § 1441(a).  Under United States Code, Title 28, Section 1441(a), this case may properly be removed to the Central District of California because Plaintiff filed this case in the Superior Court of California, County of Orange.  Additionally, Defendant is informed and believes that the events allegedly giving rise to this action occurred within this judicial district.

21

## IV.   SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

70.   In accordance with United States Code, Title 28, Section 1446(a), Exhibits A-C constitute a copy of all processes, pleadings, and orders either served upon or by Defendant.  As required by United States Code, Title 28, Section 1446(b), the Notice of Removal was filed within 30 days after Defendant was served with Plaintiff's Complaint.  As required by United States Code, Title 28, Section 1446(d), Defendant will provide notice of this removal to Plaintiff through her attorneys of record and a copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Orange.

## V.   CONCLUSION

71.   This Court has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

72.   Because the amount in controversy for only a subset of Plaintiff's allegations and causes of action for the CAFA requirement, Defendant did not include additional amounts for the First and Seventh Causes of Action. If Plaintiff seeks a remand, Defendant can include additional evidence of the amount in controversy for these additional claims as well.

WHEREFORE, Defendant removes this action to this Court.

DATED:  February 20, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Alexandra Asterlin
Alexandra Asterlin
Michael J. Nader

Attorneys for Defendant CURRICULUM ASSOCIATES, LLC

22